IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| MARGIE BRADLEY, | ) | Case No. 3:20-cv-1078 |
| | ) | |
| Plaintiff, | ) | JUDGE JEFFREY J. HELMICK |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | THOMAS M. PARKER |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |

Plaintiff, Margie Bradley, seeks judicial review of the final decision of the Commissioner of Social Security, denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act. This matter is before me pursuant to 42 U.S.C. § 405(g) and Local Rule 72.2(b). Because the Administrative Law Judge ("ALJ") applied proper legal standards and reached a decision supported by substantial evidence, I recommend that the Commissioner's final decision denying Bradley's application for DIB be AFFIRMED.

## I.      Procedural History

Bradley applied for DIB on August 15, 2017, (Tr. 137-38).[1] Bradley alleged that she became disabled on April 15, 2017, due to "Back Issues." (Tr. 137, 150). The Social Security Administration denied Bradley's application initially and upon reconsideration. (Tr. 70-89). Bradley requested an ALJ hearing. (Tr. 97-98). ALJ Carrie Kerber heard Bradley's case on April 5, 2019 and denied the claim in a May 8, 2019 decision. (Tr. 12-60). On March 30, 2020,

---

[1] The administrative transcript is in ECF Doc. 12.

the Appeals Council denied further review, rendering the ALJ's decision the final decision of the

Commissioner.  (Tr. 1-6).  On May 18, 2020, Bradley filed a complaint to obtain judicial review.

ECF Doc. 1.

## II.    Evidence

### A.    Personal, Educational, and Vocational Evidence

Bradley was born on February 19, 1969, and she was 48 years old on the alleged onset

date and 50 years old on the day of the ALJ hearing.  (Tr. 137).  Bradley graduated from high

school in 1987.  (Tr. 151).  She had past work as a certified nursing assistant.  (Tr. 43, 151).

### B.    Relevant Medical Evidence

In her written decision, the ALJ exhaustively summarized the relevant medical evidence.

*See* (Tr. 20-25).  Bradley does not challenge the ALJ's summary of the medical evidence or

submit new evidence.  And she makes no challenge to the ALJ's findings concerning the medical

issues.  *See generally* ECF Doc. 13; ECF Doc. 16.  And independent review does not reveal any

material inconsistencies between the ALJ's summary of the facts and the record before this

court.  *Compare* (Tr. 20-25) *with* (Tr. 208-726).  Thus, the court adopts and incorporates

following summary of the medical evidence from the ALJ's decision[2]:

> Prior to the alleged onset date, an MRI of the claimant's lumbar spine in 2016
> showed L3-4 and L4-5 central stenosis and a right L5-S1 paracentral disc
> protrusion as noted by Dr. Loi Phuong.  (Exhibit 1F/7 [Tr. 214).  On August 24,
> 2016, the claimant underwent a right L3-4 and L4-5 foraminotomies, right L5-S1
> diskectomy by Dr. Phuong.  (Exhibit 1F/9-10 [Tr. 216-17]).
>
> On April 1, 2017, an MRI of the claimant's lumbar spine showed status post
> relatively recent surgery with laminectomies seen at the L3-L4, L4-L5, and L5-S1
> levels on the right, bulging disk at the L3-L4 level which may be causing mild to

---

[2] *See Biestek v. Comm'r of Soc. Sec.*, No. 16-cv-10422, 2017 U.S. Dist. LEXIS 47762, at *2-3 (E.D.
Mich. Feb. 24, 2017) (adopting an ALJ's summary of medical evidence and hearing testimony), *adopted
by* 2017 U.S. Dist. LEXIS 47209 (E.D. Mich. Mar. 30, 2017), *aff'd by* 880 F.3d 7787 (6th Cir. 2017),
*aff'd* by 139 S. Ct. 1148 (2019).  *See also Paulin v. SSA*, 657 F. Supp. 2d 939, 942 (M.D. Tenn. 2009);
*Hase v. Colvin*, 207 F. Supp. 3d 1174, 1177 (D. Or. 2016).

2

moderate central spinal stenosis, and some epidural fibrosis surrounding the right S 1 nerve root with some decreased density noted along the posterior right side of the L5-Sl intervertebral disk.  (Exhibit 15F/51-52 [Tr. 720-21]).

The claimant was examined by Dr. Phuong in April 2017.  It was noted that her previous surgery in August 2016 which resolved her back and leg pain and she was able to return to work.  The claimant reported that she was experiencing recurrent low back pain within the last month with occasional numbness in her right leg.  Examination notes indicate that she displayed normal strength in her bilateral lower extremities and a straight leg raise test was negative.  Dr. Phuong reviewed medical imaging and noted that there was some epidural fibrosis at the right L5-S1.  He recommended conservative treatment and she was referred to pain management.  (Exhibit 15F/46-47 [Tr. 715-16]).

The following month, the claimant presented to Blanchard Valley Pain Management with William Hogan, Jr, MD.  The claimant reported that she was experiencing right low back pain and right foot pain that was aggravated by bending, exercise, lifting, pushing/pulling, standing, and walking.  She further reported having right foot numbness and tingling intermittently.  On examination, the claimant demonstrated tenderness to palpation in the lumbar spine and paraspinal musculature with reduced range of motion and pain upon flexion, extension, and rotation of the lumbar spine.  Her strength was noted to be 5/5 in all muscle groups and in the bilateral lower extremities.  She had no notable sensory deficits in the bilateral lower extremities to touch or pinprick with the exception to decreased sensation in the right LS, S 1 levels.  She was further noted to have a positive straight leg raise on the right and walked with an antalgic gait.  She was recommended to have a [*sic*] L5-S1 nerve root injections, she was to remain off work for four weeks, and was to follow up two weeks after the injection(s).  (Exhibit 3F/3-7 [Tr. 253-57]).  Later in June 2017, she received the injections with pain management by Dr. Hogan, which she reported did not help. (Exhibit 3F/9-11 and 13 [Tr. 259-61, 63]).

Various emergency department records from June 2017 and July 2017 indicated that, on examination, the claimant appeared to be in no distress, she displayed normal range of motion in her musculoskeletal region, and did not report any back pain.  (Exhibit l0F/2 and 6-7 [Tr. 399, 403-04]).  Additionally, pain management treatment records from July 2017, noted that that she was also observed to walk with a normal gait.  (Exhibit 3F/17 [Tr. 267])

Two months later, in September 2017, the claimant was noted to have a negative straight leg raise bilaterally and was observed to walk with a normal gait during a pain management appointment. She was referred to attend aqua therapy for further treatment of her back pain and was prescribed Mobic 7.5 mg by Matthew Niemberg, PA-C.  (Exhibit 3F/21-22 [Tr. 271-72]).  Thereafter, the claimant underwent a physical therapy evaluation regarding her chronic right sided low back pain without sciatica.  She reported difficulty with standing for 10-15

3

minutes due to back pain.  The claimant was recommended to participate in skilled physical therapy and aquatic physical therapy to address her impairments, functional limitations, and participation restrictions with good rehab potential to achieve therapy goals.  (Exhibit l0F/34-39 [Tr. 431-36]).

Later that month, physical therapy notes indicate that the claimant reported her pain as a 2 on a scale of 10.  She also denied having any numbness in her right foot for one week.  She reported that she aggravated her back by helping her aunt with laundry and other odds and ends around the home.  She further indicated that she would be going on vacation. (Exhibit l0F/41-43 [Tr. 438-40]).

The following month, she reported to her physical therapist that she was continuing to have back pain after standing and walking for 10-15 minutes but she had noticed a decrease in the frequency of the numbness in her right foot and denied having any pain following her therapy session.  (Exhibit 10F/48-49 [Tr. 445-46]).  Later that month, the claimant called to cancel any further aquatic visits until she could speak with her doctor as the exercises and medications were not helping.  (Exhibit 10F/50 [Tr. 47]).  During a pain management appointment, the claimant reported increased pain with aquatic therapy and reported no relief with Mobic.  She was to discontinue taking Mobic and was prescribed Diclofenac.  (Exhibit 3F/25-27 [Tr. 275-77]).  The claimant was later discharged from aquatic physical therapy after six visits at the claimant's request and her doctor's instructions.  (Exhibit l0F/51 [Tr. 448]).

Pain management records from Megan Verhoff, PA-C, with Blanchard Valley Pain Management in October 2017, indicate that the claimant reported no relief with Diclofenac and she was continuing to have pain in her sacroiliac, lumbar, and thoracic spine area.  She rated her pain as a 10 on a scale of 10 with activity and 0 at rest. Upon examination of the thoracic spine, the claimant displayed tenderness to palpation, muscle spasm, and diminished range of motion due to pain.  Additionally, the claimant exhibited decreased range of motion with pain in the lumbar spine, tenderness to palpation over the right sacroiliac joint with a positive Faber's sign.  Otherwise, a straight leg raise test was normal, she had 5/5 strength in all muscle groups, and her gait remained normal.  The claimant was administered a right sacroiliac joint injection.  (Exhibit 6F/7-10 [Tr. 298-301]).  An x-ray of the claimant's thoracic spine showed mild multilevel degenerative disc disease.  (Exhibit l0F/133 [Tr. 530]).  The claimant was assessed with thoracic spondylosis.  (Exhibit 6F/9 [Tr. 300]).

The claimant presented for an appointment with Dr. Megan Core in December 2017 concerned about how to get her weight down.  She reported that she was not consuming fried foods and was using an air fryer.  She reported that she was consuming three meals a day, no fruit or vegetables, was eating out 3 times a week, and regularly consumes Diet Pepsi and water.  She further reported that she was unable to exercise due to back pain.  The claimant's weight was recorded as 333.4 pounds and her height was noted as 65.5".  Her BMI was 54.6.  The

claimant was assessed with morbid obesity and was advised that if her weight was not reduced in three months, she was to be referred to weight management. Additionally, she was to begin consuming five servings of fruits and vegetables per day, was to exercise 20 minutes per day, and was not to consume bacon or pancakes. (Exhibit 12F/26-28 [Tr. 656-58]).

In April 2018, the claimant was examined at Mercer Health emergency room for left lower extremity leg wounds and it was noted that she exhibited normal range of motion, she appeared in no distress, and she walked into the emergency department without any assistive devices. (Exhibit 10F/8-9 [Tr. 405-06]).

The claimant presented for an evaluation with Frank Fumich, MD, with Orthopaedic[] Institute of Ohio, in mid-May 2018. She reported having significant symptoms of low back pain and radiculopathy, right worse than left. She reported that her symptoms were exacerbated by standing and walking. Upon examination, she demonstrated 5/5 strength, there was no swelling, no signs of DVT, and she was fully sensate throughout. An MRI of her lumbar spine from April 2017 was reviewed by Dr. Fumich. It was noted that the claimant suffers from an elevated BMI with a most recent BMI of 52.62 and will require surgery, but he recommended holding off on the surgery until her BMI was reduced to a number less than 45 as she would remain a high risk for would [*sic*] dehiscence, post-op wound infection, and non-union. Once her weight was reduced, she was recommended to undergo a surgical decompression and fusion of her lumbar spine over L3-S1. (Exhibit 7F/11-12 [Tr. 312-13]). Additional treatment notes from Alec Curry, PA-C, indicate that the claimant was referred to a nutritionist to help her lose some weight so that she could proceed with the recommended surgical options for her back pain. (Exhibit 7F/16 [Tr. 317]).

An MRI of her lumbar spine in May 2018 showed post-operative changes, multilevel degenerative disc disease. Specifically, at L5-S1 it showed diffuse disc bulging with annular tear, right paracentral and foraminal broad-based protrusion, severe narrowing right foramen, right paracentral component may be slightly smaller, right foraminal component is not significantly changed, mild proximal foraminal narrowing on the left, facet hypertrophic changes, endplate hypertrophic changes, and canal narrowing is no grossly changed. (Exhibit 15F/43-44 [Tr. 712-13]).

Treatment notes from June 2018 with Dr. Core indicate that, during a wellness exam, the claimant's weight was recorded as 340.8 pounds and her height was noted as 65.8". The claimant was observed to be well appearing. She reported that she consumes 12 beers at a sitting with camping or outings 1-2 times per month. She further reported that she was speaking with someone about having a gastric sleeve surgery done. (Exhibit 12F/8-10 [Tr. 638-40]).

During an emergency department visit at Mercer Health in July 2018, the claimant denied having any back pain but did report intermittent right upper

extremity numbness.  Upon examination, she was observed to have 1+ pretibial edema bilaterally but, otherwise, she appeared to be in no distress and exhibited no arthropathy, deformities, and was able to move all extremities.  (Exhibit 10F/12-13 and 19 [Tr. 409-10, 416]).

In the same month, the claimant presented for an appointment with Jewel Songo, PA-C, with Orthopaedic Institute of Ohio, regarding her low back pain that radiated into her lower extremities, right worse than left, which interfered with her ability to walk for long distances.  She reported difficulty losing weight and it was noted that Dr. Fumich did not want to perform any additional operations until she lost weight.  Upon examination, she appeared to be in no acute distress and had a normal gait to ambulation.  She had sensation in the lower extremities with no signs of DVT in the lower extremities bilaterally.  She maintained muscle strength of 5/5 and pulses in the ankle were strong bilaterally.  It was noted that until the claimant was able to lose weight, which may be contributing to her symptoms as well, she was to be off work for one month until she could follow up with her weight management appointment.  It was noted that Dr. Fumich would re-evaluate her surgical treatment options once she had lost weight. (Exhibit 7F/7-9 [Tr. 308-10]).

In August 2018, the claimant presented for a consultation with Dr. Loi Phuong at Fort Wayne Neurological Center regarding her low back pain and right leg and foot numbness.  The claimant reported that she developed recurrent pain in her lower back that radiates into the right posterolateral thigh and calf which had been ongoing for the last year.  She reported that she is unable to stand for more than 15 minutes at a time due to the pain.  She previously completed several months of physical therapy, water therapy, and lumbar steroid injections while under the care of Dr. Hogan.  Her weight was recorded as 338 pounds and her height was recorded as 5'7".  On examination, she exhibited -1 weakness in the right extensor hallucis longus and anterior tibialis, decreased sensation in the dorsum of the right foot, and deep tendon reflexes were absent in the knees and ankles bilaterally.  However, a straight leg raise was negative.  Based on her conservative treatment history for ongoing pain, the claimant was recommended to either continue with conservative treatment and pain management or she could undergo a right L5-S1 far lateral discectomy and posterior fusion.  The claimant elected to proceed with surgery.  (Exhibit 15F/35-36 [Tr. 704]).

On September 6, 2018, the claimant underwent a right hemi-laminectomy, right L5-S1 far lateral discectomy, L5-S1 posterolateral fusion with pedicle screw instrumentation by Dr. Loi Phuong.  (Exhibits 15F/25-30 [Tr. 694-99] and 8F/25-27 [Tr. 342-44]).  Following her surgery, she was placed on a 15 pound lifting restriction for 1 month and was not to drive for 2 weeks.  Additionally, the claimant was prescribed Flexeril and Norco for pain.  (Exhibit 9F/6-10 [Tr. 380-84]).

Loi K. Phuong, M.D., F.A.C.S., authored a letter in October 2018 indicating that the claimant had recently underwent an L5-S1 foraminotomy and fusion and was doing relatively well with improvement in her low back and right leg pain. He further noted that he did not think that she will be able to return to work as a nursing assistant. Examination findings indicated that the lumbar incision was well healed with instrumentation in good position. She was referred to physical therapy for back strengthening exercises and was to continue with a 15 pound lifting restriction. (Exhibit 15F/3 [Tr. 672]).

An x-ray of the claimant's lumbar spine on October 10, 2018 showed postsurgical/degenerative changes without acute abnormality as interpreted by Scott Welton, MD. (Exhibits 8F/6 [Tr. 323], 15F/6 [Tr. 675], and l0F/160 [Tr. 557]).

In the same month, the claimant reported, during physical therapy, that she was sore after attending her nephew's wedding on a Saturday evening. She reported taking a muscle relaxer which helped with the pain. She further noted that she was feeling "pretty good." During the therapy session she denied an increase in pain with activity included standing for 10 minutes, side stepping, mini squats, marches, forward step-ups, and gastroc stretching. (Exhibit 10F/75-76 [Tr. 472-73]). Later in the month, she reported carrying groceries which increased her soreness to a 5 on a scale of 10, however, she denied any increased pain with completion of her therapy exercises. (Exhibit 10F/78-79 [Tr. 475-76]).

In November 2018, physical therapy notes indicate the claimant reported soreness as she had gone shopping over the weekend and did a lot of walking with several long seated rest breaks. She further reported using her muscle relaxers. She reported her pain level as a 5 on a scale of 10 with activity. (Exhibit 10F/81-83 [Tr. 478-80]). Later that month, while at a physical therapy session, the claimant reported that she attended a wedding and helped in the kitchen. She reported that her pain was increased to a 6 on a scale of 10 and that she did take Norco and muscle relaxers to relieve the pain. (Exhibit 10F/84-85 [Tr. 481-82]). At the end of the month, the claimant reported that she experienced numbness in her feet while walking and pushing a cart while at Walmart and that the numbness was intermittent throughout the week. (Exhibit 10F/89 [Tr. 486]).

A physical therapy discharge summary authored by Mindy Agne, PT, dated January 30, 2019 noted that the claimant was last seen for physical therapy on November 29, 2018. She was noted to have continuing low back pain worse with ambulation. It was further noted that she was independent and compliant with her home exercise program. She demonstrated fair progress as to her back pain and function. She reported ongoing difficulty with prolonged walking, ascending and descending steps, completing household tasks, and recreational walking for weight loss. She was discharged from therapy as there was no further need for therapy. (Exhibit 11F/31-33 [Tr. 596-98]).

On January 8, 2019, the claimant presented to the emergency department at Mercer Health with reports of lower back pain after bending over to put on her socks.  She reported that the pain was constant and did not radiate into her legs, however, she had some numbness in her anterior thighs.  She reported that her pain was unresolved with Norco.  The claimant was examined and was noted to have tenderness of her right paravertebral musculature of L4-S1, diminished range of motion in the lumbar spine, and deep tendon reflexes +2/4 in her bilateral lower extremities.  Otherwise, she demonstrated a negative straight leg raise, she appeared in no acute distress, she displayed normal motor and sensory function, and she had no edema in her extremities with intact distal pulses.  An x-ray of her lumbar spine was ordered which showed stable appearance status post L5-S1 posterior fusion, multilevel degenerative changes, and no acute abnormality.  Additional exam notes indicate that the claimant was neurologically intact without any objective sensory deficits.  It was suspected that she had strained her lumbosacral area and she was administered Toradol for pain which was later improved.  She was ambulatory while in the emergency department and was discharged the same day with recommendations to follow up with her neurosurgeon.  (Exhibits [10F]/160-161 [Tr. 557-58], 11F/38-42 and 50-51 [Tr. 603-07, 615-16]).

(Tr. 20-25).

### C.     Relevant Opinion Evidence

### 1.     State Agency Consultants

On October 13, 2017, state agency consultant William Bolz, MD, evaluated Bradley's physical capacity based on a review of the medical records.  (Tr. 75-77).  Dr. Bolz determined that Bradley could lift up to 20 pounds occasionally and 10 pounds frequently; stand and/or walk for up to 4 hours in an 8-hour workday; sit for up to 6 hours in an 8-hour workday; and push and/or pull without limitation.  (Tr. 75).  Bradley could occasionally climb ramps, stars, ladders, ropes, scaffolds; stoop; kneel; crouch; and crawl.  (Tr. 75).  She could balance without limitation.  (Tr. 75).  And she had no manipulative, visual, communicative, or environmental limitations.  (Tr. 75-76).  Based on his assessment, Dr. Bolz determined that Bradley could perform the requirements of sedentary work.  (Tr. 77).  On November 24, 2017, Lynne Torello, MD, concurred with Dr. Bolz's opinion.  (Tr. 85-87).

### 2. Treating Physician Opinion – Loi Phuong, MD

On October 16, 2018, treating physician Loi Phuong, MD, wrote a letter, stating that he did not believe Bradley was able to return to her work as a nursing assistant.  (Tr.  672).  Dr. Phuong said that Bradley was doing well and improved after her L5-S1 foraminotomy and fusion and that a lumbar spine x-ray showed that her instrumentation was in a good position, but that she should be limited to lifting 15 pounds.  (Tr. 672).

## III. The ALJ's Decision

On February 21, 2019, the ALJ issued a written decision denying Bradley's claims.  (Tr. 15-28).  The ALJ made the following paraphrased findings relevant to Bradley's arguments on judicial review:

> 5.  Bradley has the residual functional capacity to perform light work, except she is limited to lifting and carrying 15 pounds occasionally and 10 pounds frequently; she can stand and walk a total of four hours in an eight-hour workday; occasionally climb ramps, stairs, ladders, ropes, and scaffolds; occasionally balance, stoop, kneel, crouch, and crawl.  In making this finding, the ALJ "considered all symptoms" in light of the objective medical and other evidence.  (Tr. 19).

> After careful consideration of the evidence, Bradley's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, Bradley's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.  (Tr. 25).

> As for medical opinion(s) and prior administrative medical finding(s), we will not defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical finding(s) or medical opinion(s), including those from your medical sources.  We fully considered the medical opinions and prior administrative medical findings in your case as follows:  (Tr. 25).

> The State agency medical consultants, William Bolz, MD, and Lynne Torello, MD, opined in the physical residual functional capacity that the claimant can frequently lift/carry 10 pounds, can occasionally lift/carry 20 pounds, can stand/walk for 4 hours in an 8 hour day, can sit for 6 hours in an 8 hour workday, can occasionally climb ramps, stairs, ladders, ropes, and scaffolds, and can

occasionally stoop, kneel, crouch, and crawl.  (Exhibits 1A [Tr. 70-78] and 3A
[Tr. 80-88]).  The undersigned finds the limitations suggested by the State agency
medical consultants persuasive and has accounted for these limitations in the
adopted residual functional capacity as they are consistent with the nature, scope,
or findings from the treatment record, and they are supported by the evidence of
record, which showed the claimant was routinely noted to have 5/5 strength in her
lower extremities and ambulated with a normal gait.  (Exhibits 3F/17 and 21-22
[Tr. 267, 271-72], 6F/7-10 [Tr. 298-301], 7F/7-9 [Tr. 308-10], and 10F/8-9 [Tr.
405-06]).  The undersigned has accounted for the claimant's subjective
complaints of increased pain with ambulation by adopting the above postural
limitations and limiting her to standing/walking to 4 hours in an 8 hour day.
(Exhibits 7F/16 [Tr. 317], 10F/89 [Tr. 486], 11F/131-133 [Tr. 696-98], and
hearing testimony [Tr. 33-60]).  Additionally, the undersigned has accounted for
the opinions of treating physicians in further limiting the claimant to lifting and
carrying 15 pounds occasionally.  (Exhibits 9F/6-10 [Tr. 380-84] and 15F/3 [Tr.
672]).  (Tr. 25).

The record also contains lifting restrictions from treating physician, Dr. Phuong,
of no more than 15 pounds.  (Exhibits 9F/6-10 [Tr. 380-84] and 15F/3 [Tr. 672]).
The undersigned finds the lifting limitation persuasive and has accounted for the
suggested limitation in the adopted residual functional capacity as it is consistent
with the evidence of record including the claimant's hearing testimony,
subjective, objective, and diagnostic findings in the treatment notes, and is
warranted based upon the claimant's combined impairments.  (Tr. 25).

6. Bradley is unable to perform any past relevant work.  Bradley has past relevant
work as a Nurse Assistant.  However, the exertional criteria and skill level of this
past relevant work preclude Bradley's return to it.

Based on these findings – and testimony from a vocational expert that an individual with

Bradley's RFC, age, and experience could work in the representative occupations of office

helper, assembler, and hand packager – the ALJ found that Bradley was not disabled from April

5, 2017 through the date of her decision.  (Tr. 26-27).  Thus, the ALJ denied Bradley's claim for

DIB.  (Tr. 28).

## IV.  Law & Analysis

### A.  Standard of Review

The court reviews the Commissioner's final decision to determine whether it was supported by substantial evidence and whether proper legal standards were applied.  42 U.S.C. § 405(g); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).  "Substantial evidence" is not a high threshold for sufficiency.  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).  "It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Id.* (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  Even if a preponderance of the evidence supports the claimant's position, the Commissioner's decision still cannot be overturned "'so long as substantial evidence also supports the conclusion reached by the ALJ.'"  *O'Brien v. Comm'r of Soc. Sec.*, 819 F. App'x 409, 416 (6th Cir. Aug 7, 2020) (quoting *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003)).  Under this standard, the court cannot decide the facts anew, evaluate credibility, or re-weigh the evidence.  *Jones*, 336 F.3d at 476.  And "it is not necessary that this court agree with the Commissioner's finding," so long as it meets this low standard for evidentiary support.  *Rogers*, 486 F.3d at 241; *see also Biestek*, 880 F.3d at 783 ("It is not our role to try the case de novo." (quotation omitted)).  This is so because the Commissioner enjoys a "zone of choice" within which to decide cases without being second-guessed by a court.  *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

Even if substantial evidence supported the ALJ's decision, the court will not uphold that decision when the Commissioner failed to apply proper legal standards, unless the legal error was harmless.  *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("[A] decision . . . will not be upheld [when] the SSA fails to follow its own regulations and [when] that error

11

prejudices a claimant on the merits or deprives the claimant of a substantial right."); *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 654 (6th Cir. 2009) ("Generally, . . . we review decisions of administrative agencies for harmless error."). Furthermore, the court will not uphold a decision when the Commissioner's reasoning does "not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Charter*, 78 F.3d 305, 307 (7th Cir. 1996)); *accord Shrader v. Astrue*, No. 11-13000, 2012 U.S. Dist. LEXIS 157595 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, No. 1:10-CV-734, 2011 U.S. Dist. LEXIS 141342 (S.D. Ohio Nov. 15, 2011); *Gilliams v. Astrue*, No. 2:10 CV 017, 2010 U.S. Dist. LEXIS 72346 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, No. 1:09-CV-19822010, 2010 U.S. Dist. LEXIS 75321 (N.D. Ohio July 9, 2010). Requiring an accurate and logical bridge ensures that a claimant, as well as a reviewing court, will understand the ALJ's reasoning.

The Social Security regulations outline a five-step process the ALJ must use to determine whether a claimant is entitled to benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of his RFC; and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)-(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642-43 (6th Cir. 2006). Although it is the Commissioner's obligation to produce evidence

at Step Five, the claimant bears the ultimate burden to produce sufficient evidence to prove that

she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a).

### B. Reliance on State Agency Consultant Opinions

Bradley argues that the ALJ "improperly . . . relied solely on opinions from medical

sources who did not review much of this substantial medical evidence." ECF Doc. 13 at 7.

Bradley asserts that the "[s]tate agency reviewers did not review substantial material and

objective evidence in the record" and "cited almost none of [the record evidence] in their

'Findings of Fact and Analysis of Evidence.'" ECF Doc. 13 at 7, 10.[3]

The Commissioner: (1) construes Bradley's brief to argue that the ALJ improperly relied

on the state agency consultants' opinions on the grounds that their opinions pre-dated much of

the medical evidence; and (2) responds that the ALJ properly relied on the state agency

consultants' opinions after considering all the evidence in the longitudinal record. ECF Doc. 12-

13. The Commissioner argues that, because the state agency consultants' opinions were

"uncontradicted in the record," the ALJ properly relied upon them in formulating her RFC

finding. ECF Doc. 15 at 14.

In her reply brief, Bradley states that the Commissioner merely "recit[ed] and affirm[ed]

the ALJ's erroneous findings" and that she rests on her initial briefing. ECF Doc. 16.

At Step Four of the sequential analysis, the ALJ must determine a claimant's RFC by

considering all relevant medical and other evidence. 20 C.F.R. § 404.1520(e). On January 18,

---

[3] In a footnote, Bradley also appears to contend that the *state agency consultants* erred in determining that no consultative physical examination was necessary on the grounds that Bradley had an "obvious history of surgery and worsening clinical physical impairments and symptoms." ECF Doc. 13 at 10 n.3. An allegation of error in a *state agency consultant's* opinion is not a cognizable claim under 42 U.S.C. § 405(g), which limits this court's jurisdiction to reviewing the final decision of the *Commissioner of Social Security*.

2017, the Social Security Administration amended the rules for evaluating medical opinions for claims filed after March 27, 2017. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017). The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 404.1520c(a). Nevertheless, an ALJ must "articulate how [she] considered the medical opinions and prior administrative medical findings" in adjudicating a claim. 20 C.F.R. § 404.1520c(a). In doing so, the ALJ is required to explain how she considered the supportability and consistency of a source's medical opinion(s), but generally is not required to discuss other factors. 20 C.F.R. § 404.1520c(b)(2). If the ALJ finds that two or more medical opinions "are both *equally well-supported and consistent* with the record but are not exactly the same," the ALJ must articulate what factors were most persuasive in differentiating the opinions. 20 C.F.R. § 404.1520c(b)(3) (internal citations omitted) (emphasis added). Other factors include: (1) the length, frequency, purpose, extent, and nature of the source's relationship to the client; (2) the source's specialization; and (3) "other factors," such as familiarity with the disability program and other evidence in the record. 20 C.F.R. § 404.1520c(c)(3)-(5). Consistency concerns the degree to which the opinion reflects the same limitations described in evidence from other sources, whereas supportability concerns the relevancy of objective medical evidence and degree of explanation given by the medical source to support the limitations assessed in the opinion. *See* 20 C.F.R. § 404.1520c(c)(1)-(2).

An ALJ may rely on a state agency consultant's opinion if it is supported by the evidence in the record. *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 274 (6th Cir. 2015). And, so long as the ALJ considers the opinion in light of all the evidence in the record, the ALJ may

credit an opinion that predates other evidence in the record.  *McGrew v. Comm'r of Soc. Sec.*,

343 F. App'x 26, 32 (6th Cir. 2009).

The ALJ applied proper legal standards in finding that the state agency consultants'

opinions were persuasive.  42 U.S.C. § 405(g); *Rogers*, 486 F.3d at 241.  The ALJ complied with

the regulations by explaining that the state agency consultants' opinions were "consistent with

the nature, scope, or findings from the treatment record, and they are supported by the evidence

of record."  (Tr. 25); 20 C.F.R. § 404.1520c(a)-(c).  The ALJ – properly – did not defer to or give

any specific weight to the state agency consultants' opinions.  20 C.F.R. § 404.1520c(a).  That

the opinions were issued in October and November 2017 did not preclude the ALJ from finding

them persuasive because the ALJ's decision, read as a whole, demonstrates that the ALJ

considered all the evidence in the record before finding that those opinions were consistent with

the record evidence.  (Tr. 20-25); *Reeves*, 618 F. App'x at 274; *McGrew*, 343 F. App'x at 32.

Further, the ALJ also properly explained that he *did not* adopt the lifting limitations in the state

agency consultants' opinions because she instead found persuasive and adopted treating

physician Dr. Phuong's opinion that Bradley could only lift up to 15 pounds occasionally.[4]  (Tr.

25).

Substantial evidence also supports the ALJ's conclusion that the state agency consultants'

opinions were consistent with the evidence as a whole.  42 U.S.C. § 405(g); *Biestek*, 139 S. Ct. at

1154.  Such evidence includes: (1) Dr. Phuong's April 2017 finding that Bradley's back and leg

pain was resolved by her surgery in August 2016; (2) examination findings that Bradley retained

full strength, normal sensory function, normal range of motion, and a normal gait (without use of

---

[4] Bradley has forfeited by failing to raise any challenge to the ALJ's treatment of Dr. Phuong's opinion.
*See Swain v. Comm'r of Soc. Sec.*, 379 F. App'x 512, 517 (6th Cir. 2010) (A plaintiff forfeits any
argument not raised in her merits brief.).

an assistive device); (3) treatment notes indicating that Bradley could improve her symptoms with diet and exercise; and (4) Bradley's own comments during her treatment visits denying numbness in her feet, rating her pain as a 2 on a scale of 10, indicating that her pain improved with muscle relaxers and medication, and indicating that she was able to perform activities like shopping, camping, walking "a lot," and carrying groceries.  (Tr., 253-57, 267, 271-72, 298-301, 308-10, 317, 339, 403-06, 472-82, 557-58, 603-07, 615-16, 638-40, 656-58, 715-16).  Because the ALJ's conclusion that the state agency consultants' opinions were consistent with the evidence was reasonably drawn from the record, the decision to find their opinions persuasive fell within the Commissioner's "zone of choice."  *Mullen*, 800 F.2d at 545; *Rogers*, 486 F.3d at 241.  And that decision cannot be second-guessed by this court, even if other evidence (or even a preponderance of the evidence) might have supported greater limitations than those in the state agency consultants' opinions.  *O'Brien*, 819 F. App'x at 416; *Jones*, 336 F.3d at 476-77; *Biestek*, 880 F.3d at 783.

### C.      Improper Medical Judgment and RFC

In slight contradiction of her argument that the ALJ improperly relied on the state agency consultants' opinions, Bradley also argues that "[t]he ALJ improperly attempted to interpret substantial objective medical evidence – including surgeries and raw medical data."  ECF Doc. 13 at 7.  Bradly asserts that this was error because "the ALJ is not qualified to interpret medical data in functional terms."  ECF Doc. 13 at 7.  Bradley then cites a Seventh Circuit decision for the proposition that lawyers are unqualified to understand "medical phenomena" and lists several medical findings that she (or her *lawyer*) believes supports a more restrictive RFC.  ECF Doc. 13 at 7-10.

The Commissioner responds that the ALJ did not improperly interpret raw medical data, but properly considered the evidence in the record to assess Bradley's RFC as the regulations require.  ECF Doc. 15 at 14-15.  The Commissioner further asserts that Bradley's recitation of evidence that she believes supported her claim is insufficient to raise an argument challenging whether evidence in the record supported the ALJ's decision.

As discussed above, the ALJ must determine a claimant's RFC by considering all relevant medical and other evidence.  20 C.F.R. § 404.1520(e).  The RFC is an assessment of a claimant's ability to do work despite her impairments.  *Walton v. Astrue*, 773 F. Supp. 2d 742, 747 (N.D. Ohio 2011) (citing 20 C.F.R. § 404.1545(a)(1) and SSR 96-8p, 1996 SSR LEXIS 5 (July 2, 1996)).  "In assessing RFC, the [ALJ] must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'"  SSR 96-8p, 1996 SSR LEXIS 5.  Relevant evidence includes a claimant's medical history, medical signs, laboratory findings, and statements about how the symptoms affect the claimant.  20 C.F.R. § 404.1529(a); *see also* SSR 96-8p, 1996 SSR LEXIS 5.

The RFC assessment requires an ALJ to walk a fine line.  An ALJ must perform her duty to evaluate the medical and other evidence while avoiding the temptation to "play doctor" by substituting her own medical judgment for that of medical professionals.  *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990); *accord Meece v. Barnhart*, 192 F. App'x 456, 465 (6th Cir. 2006); *Winning v. Comm'r of Soc. Sec.*, 661 F. Supp. 2d 807, 823-24 (N.D. Ohio 2009) ("[A]n ALJ 'does not have the expertise to make medical judgments.'").  An ALJ might cross the line when she: (1) rejects a medical opinion without relying on other evidence or authority in the record; (2) interprets *raw medical data* (*e.g.*, uninterpreted x-rays and lab results); or (3) applies a sit-and-squirm test to assess a claimant's limitations based on observations at the hearing.  *See*,

17

*e.g.*, *Weaver v. Sec'y of Health and Hum. Servs.*, 722 F.2d 310, 312 (6th Cir. 1983) (discrediting sit-and-squirm jurisprudence and requiring an ALJ to cite evidence beyond personal observations); *Harris v. Comm'r of Soc. Sec.*, No. 1:14-cv-1212, 2015 U.S. Dist. LEXIS 215464, at *50-53 (N.D. Ohio, Feb. 23, 2015) (collecting cases indicating that an ALJ needs a medical opinion to interpret "raw medical data"); *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000) ("[A]n ALJ must not substitute his own judgment for a physician's opinion without relying on other evidence or authority in the record.").

Nevertheless, the Sixth Circuit has "rejected the argument that an [RFC] determination cannot be supported by substantial evidence unless a physician offers an opinion consistent with that of the ALJ." *Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 401 (6th Cir. 2018). The RFC determination "is an 'administrative finding,' and the final responsibility for determining an individual's RFC is reserved to the Commissioner." *Shepard v. Comm'r of Soc. Sec.*, 705 F. App'x 435, 442 (6th Cir. 2017). And an ALJ does not err simply because her RFC finding is based on the objective medical evidence instead of a physician's opinion. *See Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013) ("[T]o require the ALJ to base [his] RFC finding on a physician's opinion, would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled." (quotation marks omitted)).

The ALJ did not make an improper medical judgment in this case, but instead applied proper legal standards in evaluating Bradley's RFC. 42 U.S.C. § 405(g); *Rogers*, 486 F.3d at 241. As discussed in Section V.B., above, the ALJ was not only *permitted* to consider the objective medical evidence, but was *required* to consider all the objective medical evidence in

determining: (1) whether the medical opinions of record were consistent with the record as a whole; and (2) what Bradley's ultimate RFC was during the relevant period. 20 C.F.R. §§ 404.1520c, 404.1529(a); SSR 96-8p, 1996 SSR LEXIS 5.  And, in doing so, the ALJ did not cross the line into making her own medical judgments or "playing doctor."  *Schmidt*, 914 F.2d at 118; *Meece*, 192 F. App'x at 465.  The ALJ *did not* interpret raw medical data, reject medical opinions without relying on medical evidence in the record, or apply an improper sit-and-squirm test.  *See generally* (Tr. 15-28).  Instead, the ALJ appropriately considered all of Bradley's symptoms as reflected in the objective medical and opinion evidence, adopted portions of the medical opinions in the record, and made an administrative finding of limitations based on that evidence.  (Tr. 25-28); *Mokbel-Aljahmi*, 732 F. App'x at 401; *Shepard*, 705 F. App'x at 442; *Rudd*, 531 F. App'x at 728.  Further, the same substantial evidence that supported the ALJ's weighing of the medical opinion evidence, discussed in Section V.B., above, also supported the ALJ's ultimate RFC finding.  *See* (Tr. 253-57, 267, 271-72, 298-301, 308-10, 317, 339, 403-06, 472-82, 557-58, 603-07, 615-16, 638-40, 656-58, 715-16); *see also* (Tr. 70-78, 80-88, 380-84, 672); *Biestek*, 139 S. Ct. at 1154.

Bradley's first two arguments amount, in its essence, to a critique of the ALJ's craftsmanship.  And it is perfectly appropriate for a Social Security claimant to insist that the ALJ perform as the regulations require.  But what Bradley has not done is point to medical evidence that she is not able to perform the jobs identified by the ALJ (through the VE's testimony) that Bradley could do.  Indeed, Bradley's surgeon, Dr. Phuong, who wrote a post-surgical letter in October 2018 stating that Bradley could not return to her former work, said nothing indicating that Bradley could not do other work.  And Dr. Phuong's only notable functional limitation was that Bradley should not lift more than 15 pounds occasionally.

Because the ALJ did not adopt the entirety of the prior state agency consultants' opinions but limited them in accordance with the opinion of Dr. Phuong, Bradley's own testimony, and the medical record, the ALJ has complied with the regulations and Bradley has not adduced evidence of her disability sufficient to mount a successful challenge to the ALJ's findings.

Because the ALJ applied proper legal standards and reached a decision supported by substantial evidence in evaluating Bradley's RFC, the ALJ's RFC finding fell within the Commissioner's "zone of choice" and cannot be second guessed by this court.  *Mullen*, 800 F.2d at 545; *Rogers*, 486 F.3d at 241; *O'Brien*, 819 F. App'x at 416; *Jones*, 336 F.3d at 476-77; *Biestek*, 880 F.3d at 783.

### D.     Lengthy, Solid Work History as Evidence of Symptom Severity

Finally, Bradley argues that she has a "lengthy, solid work history," which "should weigh in favor of according her symptom severity complaints substantial weight."  ECF Doc. 13 at 10.

The Commissioner responds that any argument in this portion of Bradley's argument is unclear and waived as undeveloped.  ECF Doc. 15 at 15.  Further, the Commissioner argues that nothing in the record suggests that the ALJ failed to consider Bradley's work history.  ECF Doc. 15 at 16.

Bradley's final argument does not clearly allege any error in the ALJ's decision or otherwise provide any basis upon which a remand would be appropriate.  To the extent that Bradley argues this court should command the ALJ to give greater weight to her work history, she fails to state a claim cognizable under 42 U.S.C. § 405(g) (limiting this court's jurisdiction to considering whether the Commissioner applied proper legal standards and reached a conclusion supported by substantial evidence).  *Cf. Jones*, 336 F.3d at 476 (holding that the court cannot decide facts anew, evaluate credibility, or re-weigh the evidence).  And to the extent Bradley

argues that the ALJ failed to appropriately consider her work history in evaluating her subjective complaints, her argument fails.  The ALJ properly: (1) considered whether Bradley's subjective complaints were consistent with the medical and other evidence in the record; (2) explained that her complaints were not consistent with the other evidence; and (3) adequately considered her work history in determining whether she was disabled.  (Tr. 20-28); *See Jones*, 336 F.3d at 475-76 (An ALJ is not required to accept a claimant's subjective complaints if they are inconsistent with objective medical and other evidence.); SSR 16-3p, 2016 SSR LEXIS 4, at *15-19 (Oct. 25, 2017) (providing the standard for evaluating subjective complaints); *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994) (An ALJ must state the reasons for discounting or rejecting a claimant's subjective complaints.).  Accordingly, Bradley has failed to meet her burden to show that the ALJ failed to apply proper legal standards or reach a decision supported by substantial evidence.  42 U.S.C. § 405(g).

## V.    Recommendation

Because the ALJ applied proper legal standards and reached a decision supported by substantial evidence, I recommend that the Commissioner's final decision denying Bradley's application for DIB be AFFIRMED.

Dated: March 24, 2021

Thomas M. Parker

United States Magistrate Judge

---

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See U.S. v. Walters,* 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn,* 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986).